**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 17-20085-CR-MARTINEZ**

**UNITED STATES OF AMERICA**

**vs.**

**ABHIJEETSINH JADEJA,**

**Defendant.**
_______________________________________/

# FACTUAL PROFFER

Had this case proceeded to trial, the United States of America would have proven beyond a reasonable doubt the following facts.

From January 2014 through March 2016, Defendant Abhijeetsinh JADEJA conspired with others, including Rachel Jean RORAGEN and Anandkumar Jayantila NAYEE to defraud victims. More specifically, JADEJA's co-conspirators contacted victims by telephone and made false and fraudulent representations to them, including that the victims owed income tax payments to the Internal Revenue Service (IRS), or owed fees for grants or loans that they had purportedly received. JADEJA's co-conspirators instructed the victims to deposit payments related to the taxes or fees that they purportedly owed onto debit cards and into bank accounts controlled by JADEJA, RORAGEN, NAYEE, and their co-conspirators. JADEJA, RORAGEN, NAYEE, and their co-conspirators then received and retained the victims' payments.

On February 28, 2014, law enforcement found in JADEJA's possession, including in his apartment, over 90 Green Dot prepaid debit cards, which had been registered using the names, social security numbers, and dates of birth of other people, without their permission, and which had been funded by payments made by victims of the telephone fraud scheme. Law enforcement

Court Exhibit #1

also found Green Dot prepaid debit cards that had not yet been activated, and the packaging on the cards stated that Green Dot would ask for name, address, date of birth, social security number, and phone number when registering a card, and warned that federal law requires Green Dot to obtain, verify, and record information of each person in whose name a card is registered. Law enforcement also found in JADEJA's possession money orders that had been purchased using the prepaid debit cards, and receipts for money orders that had been purchased using the Green Dot prepaid debit cards.

Further investigation, including evidence gained from a consensual search of JADEJA's cellular telephone, revealed that, from January 2014 through February 28, 2014, JADEJA had, in the Southern District of Florida, used the Green Dot prepaid debit cards to withdraw funds and purchase money orders totaling over $94,000. JADEJA then deposited the money orders into accounts controlled by his co-conspirators.

For example, victim "H.T." had applied for a grant online. In early 2014, one of JADEJA's co-conspirators called H.T. and told him/her that he/she had been awarded the grant and needed to make a payment to cover transfer fees associated with the grant. H.T.'s payment was deposited onto a Green Dot prepaid debit card ending in 5205, which was found in JADEJA's apartment on February 28, 2014, and which JADEJA had used to withdraw funds in Miami, Florida on February 19, 2014. The withdrawal of funds caused a wire to be transmitted from the Southern District of Florida to California.

Similarly, a victim of the telephone fraud scheme deposited funds onto a Green Dot prepaid debit card ending in 6653. On February 12, 2014, JADEJA purchased the Green Dot prepaid debit card ending in 6653. The debit card was registered in the name of "G.Y.," who was a real person, using G.Y.'s name, date of birth, and social security number, without G.Y.'s

permission or consent, and funded by a victim of the telephone fraud scheme. That same day, February 12, 2014, JADEJA used the Green Dot prepaid debit card to withdraw $2,009.45 in Miami, Florida. The withdrawal of funds caused a wire to be transmitted from the Southern District of Florida to California. The Green Dot prepaid debit card ending in 6653 was found in JADEJA's possession on February 28, 2014.

In a February 28, 2014 post-*Miranda* statement, JADEJA admitted his involvement in the telephone fraud scheme, admitted he received financial compensation for his participation in the scheme, and stated that he was working with NAYEE, who, at the time, resided in India.

On September 4, 2015, one of JADEJA and RORAGEN's co-conspirators called victim "C.L.M." and told him/her that he/she owed income taxes to the IRS. Per the caller's instructions, C.L.M. deposited $9,000 into a Bank of America account ending in 5212, belonging to RORAGEN. That same day, other victims of the telephone fraud scheme deposited $6,000 into RORAGEN's Bank of America account ending in 5212 (for a total of $15,000).

On September 5, 2015, RORAGEN used funds from the Bank of America account ending in 5212 to purchase a $13,500 cashier's check made out to JADEJA. The purchase of the cashier's check caused a wire to be transmitted from the Southern District of Florida to outside the state of Florida.

On December 2, 2015, one of JADEJA's and RORAGEN's co-conspirators called victim "J.F." and told him/her that he/she owed income taxes to the IRS and would be arrested if he/she did not pay over $30,000. Per the caller's instructions, J.F. deposited $4,600 into a Wells Fargo account ending in 4873, belonging to RORAGEN.

Also on December 2, 2015, other victims of the telephone fraud scheme deposited $8,800 into RORAGEN's Wells Fargo account ending in 4873 (for a total of $13,400). That same day,

JADEJA and RORAGEN withdrew the funds at different branches in Miami, Florida. Each of these withdrawals caused a wire to be transmitted from the Southern District of Florida to outside of the state of Florida.

From January to March 2017, JADEJA and NAYEE's co-conspirators called victims of the telephone fraud scheme and induced them to send at least $45,000 in funds via money transfer. NAYEE provided JADEJA with the money transfer information, JADEJA picked up the money transfers, and JADEJA deposited the funds into bank accounts specified by NAYEE.

JADEJA agrees that, from January 2014 through March 2016, he conspired with others to commit wire fraud; on February 28, 2014, he possessed fifteen or more debit cards registered to other persons; and on February 12, 2014, he transferred, possessed, and used a debit card ending in 6653, registered to G.Y., whom JADEJA knew to be a real person, without lawful authority and with the intent to defraud. The parties agree that this conduct affected interstate commerce.

The information contained in this proffer is not a complete recitation of the facts and circumstances of this case, but the parties agree it is sufficient to prove Counts 1 and 10 of the Indictment beyond a reasonable doubt.

BENJAMIN G. GREENBERG
ACTING UNITED STATES ATTORNEY

Date: 3/23/17 By: ____________________
DAYA NATHAN
ASSISTANT UNITED STATES ATTORNEY

Date: 3/23/17 By: ____________________
JASON GREY
ATTORNEY FOR DEFENDANT

Date: 3/23/17 By: ____________________
ABHIJEETSINH JADEJA
DEFENDANT